IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANE DOE NO. 55, by and through
JANE DOE'S MOTHER and
JANE DOE'S FATHER,

                                                    OPINION and ORDER

                      Plaintiff,

                                                           15-cv-570-bbc

            v.

MADISON METROPOLITAN
SCHOOL DISTRICT,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Jane Doe No. 55 is suing defendant Madison Metropolitan School District under Title IX of the Education Amendments of 1972 and Wisconsin common law for failing to prevent a school district employee from sexually abusing her while she was a student. Defendant has moved for summary judgment on both claims. Dkt. #30. Also before the court are defendant's motion for a protective order, dkt. #50, and plaintiff's motion for leave to file an additional expert report, dkt. #87.

With respect to defendant's motion for summary judgment, it is undisputed that defendant was not aware of any sexual abuse while it was occurring. However, plaintiff argues that defendant should be held liable for the abuse because it was aware of frequent hugs and other excessive touching between plaintiff and the employee and it was aware that plaintiff had a crush on the employee. These facts might allow a reasonable jury to find that

defendant was aware of inappropriate conduct and acted unwisely by failing to take more aggressive steps to stop it.  However, not all inappropriate conduct violates the law.  Rather, both of plaintiff's claims require proof that defendant knew about the sexual abuse or at least was aware of facts that would make it obvious that abuse would occur.  Because I conclude that no reasonable jury could make that finding, even if it viewed the evidence in the light most favorable to plaintiff. she cannot prevail on her claims.

In its motion for a protective order, defendant objects to a discovery request for certain personnel records related to the principal of plaintiff's school, Deborah Ptak. Although Magistrate Judge Stephen Crocker has not yet ruled on this motion, plaintiff has not filed a motion under Fed. R. Civ. P. 56(d) to stay a summary judgment decision pending a determination regarding the protective order and she does not argue in her summary judgment submissions that she needs the information for the purpose of opposing summary judgment, so I am denying defendant's motion for a protective order as moot.  Plaintiff does not argue that her request to file an additional expert report is relevant to summary judgment either, so I am denying that motion as moot as well.

Before setting forth the undisputed facts, I note a prevalent problem in the parties' proposed findings of fact.  Both sides referred repeatedly to the observations, beliefs, statements and perceptions of various school employees as well as plaintiff's mother, but plaintiff's claim is premised on the view that it was knowledge of the principal, Deborah Ptak, that triggered defendant's duty to act.  Therefore, unless someone communicated an observation to Ptak or a party pointed to admissible evidence showing that Ptak was

2

otherwise aware of particular conduct, I have not included observations of others in the undisputed facts section.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

At the time relevant to this case (2013 to 2014), plaintiff Jane Doe No. 55 was a student in seventh or eighth grade at Whitehorse Middle School, which is part of defendant Madison Metropolitan School District.  Willie Collins was a "security assistant" at the school.  His duties included supervising lunch and recess, monitoring students in detention and keeping the school safe and secure.  (The parties dispute whether "mentoring students" and "providing emotional support to students" are part of a security assistant's job duties.)

Deborah Ptak was the principal of the school at all relevant times.  She had supervisory authority over Collins, who was also supervised by Luis Yudice, the school safety and security coordinator.

## A.  Ptak's Responsibilities Related to this Case

Under school district policy, staff who suspect sexual harassment or abuse are required to report it to the principal, the Title IX coordinator or the school district's legal department.  Ptak conducts investigations on sexual harassment and sexual abuse at the school.  If someone else, such as a social worker, conducts an investigation, Ptak asks to be

notified of updates because "all employee matters come to" her.  Ptak Dep., dkt. #40, at 41.
"If there's a student issue, the buck stops with [Ptak]."  Id.   However, if Ptak determines
that harassment or abuse occurred, she does not have "autonomy to discipline an employee,"
id. at 42, with the exception of a verbal reprimand.  If more is needed, she contacts the
school district's legal department.  If the department determines that corrective action is
needed, Ptak implements that action.

### B.  Ptak's Observations of Collins

Ptak observed Collins having personal conversations with students.   He was a
"mentor" and "confidant" to many of them.  Ptak Dep., dkt. #40, at 161-62.

Ptak saw Collins giving hugs to students, both boys and girls. Most of these hugs, if
not all of them, were initiated by the students.  The school safety and security coordinator
trains security assistants to give students a "sideways hug" that was "a brief touching arm
around the shoulder."  Yudice Dep., dkt. #64 at 38.  However, Collins sometimes gave "bear
hugs" and "strong, full hugs" to students.

While plaintiff was in seventh grade, Ptak "occasionally" observed Collins rubbing
students' shoulders in the cafeteria at lunch time.  Tracy Warnecke, an employee who also
supervised the cafeteria, saw Collins give many students shoulder rubs, both boys and girls,
"three to four times a week."  Warnecke Dep., dkt. #39, at 54-55.

At unspecified times, Ptak observed Collins rubbing plaintiff's shoulders in the
cafeteria.  He "would walk up behind her, take both of his hands and just rub the top of her

4

shoulders." Ptak Dep., dkt. #40, at 104.  Ptak observed this "a few" times.  Id.  Plaintiff

testified that, at the time, Collins's conduct did not make her feel uncomfortable.

C. <u>Reports to Ptak from Other School Employees about Collins</u>

In 2013, while plaintiff was in seventh  grade, school employee Warnecke observed

that plaintiff would "seek[] . . . out" Collins, stand by him outside during recess and visit

him in his office.  In addition, Warnecke observed plaintiff asking Collins for hugs "many"

times and on one occasion kissing him on the cheek.  In describing Collins's response to the

kiss, Warnecke stated: "He redirected her when—after the first kiss I saw.  The second time

she went to go kiss him on the cheek, she—he stopped it and then took her for a private

conversation because we were in the hallway." Dkt. #39 at 41.  Later,  Warnecke told Ptak

that she had observed plaintiff kiss Collins on the cheek.  Warnecke also told Ptak that

plaintiff was hugging Collins "a lot" and that Collins was hugging her back.  Ptak said that

she would "follow up" with Collins.  Id. at 47.

Also during plaintiff's seventh grade year, at a pupil services committee meeting,

Karen Wydenven (the school psychologist) and Mary McCauliffe (a school counselor) told

Ptak about their concern that some female students were "hugging [Collins] a lot."

Wydeven Dep., dkt. #70, at 41.  Ptak  said, "that's just Willie's personality . . . because he's

a coach . . . and . . . the kids know him."  Id.  (Other than this statement, the parties say

nothing in their proposed findings of fact about Collins's status as a coach at the school.)

When others at the meeting expressed support for Wydeven's concern, Ptak said that she

5

would talk to Collins.

Some time between February and May 2013, Jamie Duckert, a school social worker, told Ptak that she was concerned because "frequently girls in the school would give [Collins] hugs." Duckert Dep., dkt. #81, at 56.

In April 2013, Ptak spoke with school counselor McCauliffe about plaintiff's and Collins's relationship. McCauliffe said that a teacher had raised concerns because plaintiff was seeking out Collins and hugging him "a lot." In addition, during lunch duty with Collins, McCauliffe saw plaintiff "running to [Collins] frequently, jumping on him, hanging—attempting to hang on his arm trying to hug him." Ptak Dep., dkt. #40, at 165. Collins would give plaintiff shoulder rubs. Like Warnecke, McCauliffe saw plaintiff attempt to kiss Collins on the cheek on one occasion. (The parties do not say whether this was the same incident that Warnecke observed.)

In response, Ptak told McCauliffe that she would "meet[] with [Collins] about setting up boundaries with" plaintiff. Id. at 166. McCauliffe stated that she would talk to plaintiff and her family. Although McCauliffe spoke to plaintiff about another issue (regarding potential self harm), they did not speak about Collins. Ptak never followed up with McCauliffe about talking to plaintiff.

On or around April 13, 2013, Ptak spoke with Collins. After describing the concerns that others had raised, she "asked him . . . from his perspective what was happening." Id. at 170. Collins said that plaintiff "had been confiding in him about concerns with home and concerns with peer relationships and that he was supporting her." Id. Ptak told Collins that

6

she wanted him to "limit" the "hugs and physical contact" with plaintiff.  In addition, she "recommended" that he stop talking to plaintiff in "private place[s]."  He could "still talk to her and be supportive, but it should be in a common area."  Ptak Dep., dkt. #40, at 170.  (The parties do not say what Collins said in response.)  Ptak's notes from after the meeting state that she "cautioned" Collins about "hugs and physical contact" and "reminded him that he is to report any concerns about students' safety and well being."  Dkt. #32-12.

On or around April 24, 2013, McCauliffe called plaintiff's mother to discuss various concerns, including plaintiff's relationship with Collins.  After that conversation, McCauliffe spoke to Ptak about what plaintiff's mother had said.  McCauliffe told Ptak that plaintiff was using Collins's name as her passcode on her phone, that plaintiff was "hang[ing] on [Collins] all the time" and that plaintiff was "really preoccupied" with Collins.  McCauliffe asked Ptak to speak with both plaintiff's mother and Collins.  McCauliffe Dep, dkt. #37, at 67-68.  Ptak said that she would "take care of it."  Id.  However, Ptak and plaintiff's mother never spoke.  (The parties dispute whether Ptak attempted to contact plaintiff's mother and they do not say whether Ptak spoke with Collins again.)

On April 26, 2013, plaintiff's mother sent an email to Collins.  She wrote that she "want[ed] to apologize" to Collins for "dragging [him] into the drama" with plaintiff, that she was "not upset with [Collins] at all" and that she wanted to "thank [Collins] for being so kind to" plaintiff.

A week or two later, McCauliffe reported to Ptak that a teacher had seen Collins at a tennis match where plaintiff was playing.  Ptak was not concerned because Collins may

have been there to mentor a student other than plaintiff.  McCauliffe said that she would follow up with the teacher but McCauliffe never spoke to Ptak about it again.

After April 2013, Ptak noticed a "significant decrease" in physical contact between plaintiff and Collins.  However, in May 2013, McCauliffe notified Ptak that plaintiff was trying to get out of class, telling her teachers that she needed Collins to help her with a "problem." (The parties do not say how Ptak responded to this information.)

In plaintiff's eighth grade year, Ptak does not recall seeing any hugging or other physical contact between plaintiff and Collins.  No staff members or anyone else came to Ptak with concerns about plaintiff's relationship with Collins during that school year.

### D.  Collins's Abuse of Plaintiff

Plaintiff alleges that Collins began to sexually abuse her in September 2013, while she was in the eighth grade.  The abuse included sexual comments, kissing, fondling plaintiff's breasts, rubbing his penis against her body and digital penetration of her vagina.  It usually occurred in Collins's office. The abuse stopped in June 2014, after plaintiff graduated from eighth grade.  Plaintiff did not tell anyone about the abuse and did not otherwise complain about Collins until August 2014, when she told her cousin.  Plaintiff is not aware of any school employee (or anyone else) who witnessed the abuse.

In September 2014, after school district officials learned of the allegations that Collins had sexually abused plaintiff, they placed him on administrative leave.  The Dane County sheriff's department conducted an investigation of plaintiff's allegations, but the

district attorney did not charge Collins.

OPINION

A. Title IX

1. Standard of review

Under Title IX, "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although the primary enforcement mechanism of the statute is the withdrawal of federal funds, the Supreme Court has inferred a private right of action against educational institutions such as school districts when the district has a discriminatory practice or policy, Cannon v. University of Chicago, 441 U.S. 677 (1979), or when "an official of the school district who at a minimum has authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, [an employee's discriminatory] misconduct." Gebser v. Lago Vista Independent School District, 524 U.S. 274, 277 (1998).  Prohibited sex discrimination under Title IX includes sexual harassment and sexual abuse, so long as the misconduct was "so pervasive or severe that it altered the conditions of plaintiff's education." Mary M. v. North Lawrence Comunity Schoool Corp., 131 F.3d 1220, 1228 (7th Cir. 1997).  See also Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 650 (1999) (conduct is not "discrimination" under Title IX unless it "deprive[s] the victims of access to the educational opportunities or benefits provided by the

school").

The parties debate three issues: (1) whether notice to Deborah Ptak, the principal of plaintiff's school, qualifies as notice to the school district; (2) if so, whether Ptak had sufficient notice to trigger a duty to act; and (3) if so, whether Ptak's response was adequate. Because I conclude that plaintiff has not adduced evidence that Ptak had notice of sexual harassment, I need not consider the other two issues.

2. Actual notice

a. Meaning of "actual notice"

In setting forth the standard of review in Gebser, the Supreme Court did not describe in detail what it meant when it said that a school district must have "actual notice" of "misconduct." As a result, courts have taken differing views. Some courts have stated that the defendant must have knowledge of conduct that qualifies as discrimination or sexual harassment. E.g., Baynard v. Malone, 268 F.3d 228, 237–38 (4th Cir. 2001) ("Title IX liability may be imposed only upon a showing that school district officials possessed actual knowledge of the discriminatory conduct in question."); Crandell v. New York College of Osteopathic Medicine, 87 F. Supp. 2d 304, 320 (S.D.N.Y. 2000) ( "[T]he institution must have actual knowledge of at least some incidents of harassment in order for liability to attach."). Other courts have determined that a plaintiff must show that the school district knew of a substantial *risk* that the plaintiff would be subjected to conduct that qualifies as sexual harassment. Doe A. v. Green, 298 F. Supp. 2d 1025, 1034 (D. Nev. 2004)

10

(defendant may be held liable if "a supervisory school official knows, or it should be obvious to him or her, that a school employee is a substantial risk to sexually abuse children"); Frederick v. Simpson College, 149 F. Supp. 2d 826, 838 (S.D. Iowa 2001) (deciding that actual notice requires "actual notice... that [the teacher] was at risk of sexually harassing a student").

The Court of Appeals for the Seventh Circuit has used language that could support either view.  First, in Delgado v. Stegall, 367 F.3d 668 (7th Cir. 2004), the court observed that, generally, "actual notice and deliberate indifference are *alternative* paths to proving knowledge," id. at 671 (emphasis added), rather than two parts of the same test.   In particular, "[d]eliberate indifference means shutting one's eyes to a *risk* one knows about but would prefer to ignore."  Id. (emphasis added).  In contrast, "the plaintiff in a Title IX damages suit based on a teacher's behavior must prove *actual knowledge of misconduct*, not just actual knowledge of the risk of misconduct."  Id. at 672 (emphasis added). Despite this language, the court went on to say that knowledge of a risk of harm is sufficient to prove notice under Title IX if the risks are "so great that they are almost certain to materialize if nothing is done."  Id.  As an example, the court stated that, if the teacher "had been known to be a serial harasser, [the defendant] might well be found to have had a sufficient approximation to actual knowledge that [the plaintiff] would be harassed."  Id.

In Hansen v. Board of Trustees of Hamilton Southeast School Corp., 551 F.3d 599, 605 (7th Cir. 2008), the court rejected the view that "something less than actual knowledge of a teacher's misconduct will suffice as a predicate to Title IX liability."  Rather, only

"known acts of discrimination or harassment" trigger a duty to act under Title IX.  Id.  The court then restated the standard in a slightly different way, namely, that the plaintiff must prove that the defendant had "actual knowledge of misconduct by [the teacher] that created a serious risk to [the defendant's] students."  Id. at 606.

Finally, in Doe v. St. Francis School District, 694 F.3d 869, 871 (7th Cir. 2012), the court stated that "'[a]ctual notice' and 'deliberate indifference' are redundant," departing from the view in Delgado that the two terms present "alternative paths" of proving knowledge.  The court repeated its statement from Delgado that a plaintiff must prove "actual knowledge of misconduct, not just actual knowledge of the risk of misconduct."  However, in trying to provide "a clearer statement of the standard," the court wrote that the choice was between "the criminal standard of recklessness—conscious disregard of a substantial and unjustifiable risk of causing harm" and "the tort standard of recklessness—conscious disregard of known or obvious dangers."  Id. at 871.  For the purpose of that case, the court assumed that proof of an "obvious danger" was sufficient.  Id.  However, either of those standards would impose liability for knowledge of a substantial risk of harm, not just knowledge that harm was already occurring.  This seems inconsistent with the court's statement in Hansen that the plaintiff must identify "known acts of discrimination."

The cases discussed above raise two interrelated questions about the "actual notice" standard.  First, what level of certainty must the school district have?  Must the district know about actual harm that is occurring or is knowledge of a risk of harm sufficient?  Second, if

12

the district must know about actual harm, what type of harm suffices?  Must it be conduct that qualifies as sexual harassment in itself or can it be something less serious that could lead to sexual harassment?

As the Court of Appeals for the Seventh Circuit indicated in St. Francis, requiring only knowledge of a substantial risk of harassment would be consistent with the Supreme Court's cases involving a "deliberate indifference" standard in other contexts.  Farmer v. Brennan, 511 U.S. 825 (1994) (prison official may be held liable for consciously disregarding substantial risks of serious harm); Canton v. Harris, 489 U.S. 378 (1989) (municipality may be held liable under § 1983 for disregarding obvious risk of constitutional violation).   On the other hand, requiring knowledge of conduct that qualifies as discriminatory harassment seems consistent with statements in Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 642 (1999), another Title IX harassment case, that a duty to act is not triggered except by "acts of teacher-student harassment of which [the defendant] had actual knowledge."  See also  Baynard, 268 F.3d at 238  (relying on Davis to support view that plaintiff must prove that defendant "was in fact aware that a student was being abused").

I need not belabor the issue because plaintiff assumes that she must prove that Ptak knew about conduct that qualifies as sexual harassment.  Plt.'s Br., dkt. #55, at 7 ("[C]onstructive notice of sexual harassment . . . is insufficient; rather, there must be notice of acts of sexual harassment.").  Thus, plaintiff's success at the summary judgment stage depends on her argument that the physical contact Ptak observed and learned about from

13

other school officials was sufficiently severe or pervasive to be sexual harassment under Title IX.

b.  Physical contact between plaintiff and Collins

It is undisputed that Ptak was not aware of any sexual abuse of plaintiff until months after the abuse occurred.  It is also undisputed that no sexual abuse was occurring during plaintiff's seventh grade year, when some school staff members raised concerns about plaintiff's and Collins's relationship.   The physical contact of which Ptak was aware consisted of Collins hugging and rubbing the shoulders of both plaintiff and other students.

People may disagree reasonably on the question whether school staff should have physical interactions of any kind with middle school students.  These differences of opinion are reflected in the statements of defendant's staff, some of whom believed that physical affection with students was inappropriate and some of whom believed it could be included as part of a supportive environment.  Compare Dft.'s PFOF ¶ 13, dkt. #81 ("Warnecke believed hugs between an adult staff member and a student would be appropriate as a sign of comfort or as a friendly sign of greeting, depending on the relationship between the adult and the student."), and id. at ¶ 14 ("Warnecke believed that it could be appropriate for an adult staff member to give a shoulder rub or back rub to a student because it could be used as a de-stressing technique, or a method to coach or show support."), and id. at ¶ 16 ("Ptak believes that physical touch can be used to assist children with comfort, learning and can help focus their attention."), with Plt.'s PFOF ¶ 133, dkt. #81 ("[S]ome staff members

14

indicated that 'you shouldn't hug students.'"), and id. at ¶ 150 (quoting statement of school employee that, "in general, as professional educators and adults in a school, hugging isn't always the most appropriate way to interact with kids."). Thus, if the question were whether Ptak was aware of inappropriate conduct, these differences in opinion would lend support to the view that there is a genuine issue of material fact precluding summary judgment.

However, what plaintiff fails to appreciate is that not all inappropriate conduct toward a student qualifies as sexual harassment under Title IX. J.F.K. v. Troup County School District, 678 F.3d 1254, 1261 (11th Cir. 2012) ("[Defendant] knew [employee's] conduct was inappropriate, devoid of professionalism, and reeked of immaturity; however, despite this, her known conduct was not . . . conduct of a sexual nature."); Doe v. School Administrative District No. 19, 66 F. Supp. 2d 57, 63 (D. Me.1999) (actual notice "requires more than a simple report of inappropriate conduct"). Plaintiff cites no authority for the view that hugging is sexual harassment, particularly under the circumstances of this case in which it is undisputed that it primarily was plaintiff and the other students who initiated hugs with Collins rather than the other way around. Gordon ex rel. Gordon v. Ottumwa Community School District, 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) ("Returning a hug initiated by a student does not suggest that a school employee has a propensity toward sexual abuse."). Plaintiff relies on testimony of the school's safety coordinator for the view that Collins should have limited his physical interactions with students to "side hugs." That may be correct as a matter of good policy, but that does not mean that anything other than a side hug is sexual harassment. Plaintiff does not allege that the hugs she or other students

15

received involved groping or other type of sexual touching.

Shoulder rubs may present a closer question, both because Collins initiated those contacts and because they could be viewed as more intimate and invasive than a hug. However, for several reasons, I do not believe that a reasonable jury could find that the shoulder rubs were sexual harassment in the context of this case or that defendant's failure to stop that conduct from occurring makes it liable under Title IX.  <u>Davis</u>, 526 U.S. at 651 ("Whether gender-oriented conduct rises to the level of actionable 'harassment' . . . depends on a constellation of surrounding circumstances, expectations, and relationships.").

First, plaintiff does not allege that there was anything sexual or erotic about this conduct.  Again, she does not suggest that Collins groped her and she does not allege that the shoulder rubs consisted of anything more than brief contact for the purpose of greeting a student.

Second, plaintiff does not allege that Collins singled her out.  Rather, it is undisputed that Collins greeted many students the same way, including boys.  Of course, harassing conduct cannot evade scrutiny simply because it is widespread.  However, Title IX does not regulate all physical contact in the school setting; it prohibits sex discrimination.  Thus, if Collins treated boys the same way he treated plaintiff, it undermines a conclusion that defendant's failure to stop the conduct violated Title IX.  Along the same lines, if Collins was not singling out plaintiff, that would make it less clear to Ptak that Collins's conduct was a type of "grooming" for sexual exploitation, as plaintiff now suggests it was.

Third, the shoulder rubs of both plaintiff and the other students all occurred in

public, and more specifically, in the cafeteria when Collins would approach students while they were sitting down. Because the conduct did not occur in a private setting and Collins was making no attempt to hide the conduct, again, this would make it less obvious to Ptak that the conduct was intended to be sexual or was otherwise a form of sexual harassment. A shoulder rub in such a public setting would likely be construed differently by an observer than if it occurred surreptitiously in a stairwell or Collins's office.

Finally, plaintiff does not allege that Collins's conduct made her uncomfortable at the time. Of course, plaintiff is correct that, when the student is a minor, she cannot "consent" to harassment. Mary M., 131 F.3d at 1227. However, this does not change the fact that the plaintiff must show that the conduct was sufficiently severe or pervasive to alter the conditions of her education. Id. at 1228. In the absence of any evidence, either objective or subjective, that the shoulder rubs had any negative effect on plaintiff or any other student, it is difficult to say that the conduct qualified as harassment, let alone that it should have been obvious to Collins that it was.

Plaintiff says that Collins's conduct violated defendant's policies against sexual harassment, but this argument fails for two reasons. First, plaintiff's claim arises under Title IX, not school policy. Again, in determining whether conduct is sexual harassment under Title IX, the question is whether the conduct altered the conditions of the student's education, regardless how a particular school defines sexual harassment. Second, even if I assume that school policy is relevant to an analysis under Title IX, plaintiff devotes only one sentence in her brief to this argument and she fails to explain why she believes that the hugs

17

and shoulder rubs violated the policy.  Accordingly, plaintiff has forfeited this argument.

The most clearly inappropriate physical contact between plaintiff and Collins observed by school staff was the kiss on the cheek that plaintiff gave Collins.  However, it is undisputed that plaintiff kissed Collins and Collins did not try to reciprocate.  Further, when plaintiff attempted a second kiss, Collins stopped her.  Plaintiff points to no evidence suggesting that Collins encouraged the kiss or that he responded to it in a way suggestive of abuse.  Thus, the kiss may have been a clear sign that plaintiff had an inappropriate attachment to Collins, but no reasonable jury could find that Collins's conduct in this situation qualified as sexual harassment.

In an attempt to bolster her claim, plaintiff cites a video exhibit showing various public interactions between Collins and students in school hallways during a two-week period at the end of plaintiff's eighth grade year.  Plaintiff's reliance on the video is misplaced for several reasons.  First, most of the video shows Collins with students other than plaintiff.  The only interactions with plaintiff do not involve any physical contact.  Although the Court of Appeals for the Seventh Circuit has stated that known incidents of sexual abuse of students other than the plaintiff can provide actual notice, Delgado, 367 F.3d at 672, plaintiff points to no conduct in the video that would make it obvious that Collins would abuse her.  Most of the interactions involve students coming up to Collins and hugging him, the same conduct already discussed.  To the extent there is any conduct on the video that is qualitatively different from what school staff reported to Ptak, plaintiff does not lay a foundation for inferring that Ptak observed the conduct or otherwise knew about it,

18

much less that she observed similar conduct between plaintiff and Collins.

c.  Other evidence of an inappropriate relationship

In addition to the physical contact, plaintiff relies on concerns that school staff communicated to Ptak about inappropriate boundary crossing between plaintiff and Collins. In particular, school staff reported to Ptak that plaintiff was seeking out Collins and "hanging on" him and that she had become "really preoccupied" with Collins to the point that she had used his name as a passcode.

I agree with plaintiff that a reasonable jury could find that the relationship between her and Collins was "disconcerting."  Plt.'s Br., dkt. #55, at 12.  However, the Court of Appeals for the Seventh Circuit has held that concerns about an "inappropriate" relationship are not sufficient to give actual notice of sexual harassment under Title IX.  For example, in St. Francis School District, 694 F.3d at 872, the defendant knew about concerns from other teachers that a colleague and one of her eighth grade students had "something like an eighth grade girlfriend/boyfriend relationship" or had "a crush" on each other.  However, because the defendant did not know that the two had a sexual relationship and the relationship was not obvious, the defendant could not be held liable.  Id.  The court reasoned, "What the principal and the superintendent knew was that [the teacher's] colleagues . . . suspected an improper relationship between [the teacher] and the plaintiff. But to know that someone suspects something is not to know the something and does not mean the something is obvious."  Id.

19

In this case, it is undisputed that plaintiff did not *have* a sexual relationship with Collins at the time that school staff raised their concerns to Ptak.  Thus, to the extent that plaintiff is required to prove that defendant knew about sexual harassment that was occurring at the time, the conversations that Ptak had with staff during plaintiff's seventh grade year are not sufficient.

Even if I assume that plaintiff could prevail by showing that defendant Ptak was aware of a substantial *risk* of sexual harassment in the future, the concerns communicated by school staff are not sufficient to provide actual notice, even when considered with the physical interactions that plaintiff and Collins had during her seventh grade year.  It is undisputed that the concerns raised to Ptak were much more about plaintiff than they were about Collins.  Plaintiff's conduct may have suggested that plaintiff and Collins should not have any contact with each other because plaintiff had an unhealthy attachment to him, but the question presented by a claim under Title IX is not whether the defendant made a wise decision.  Rather, it is whether the defendant had notice of sexual harassment. Because plaintiff's conduct has limited probative value in showing whether Ptak was aware that Collins was likely to make sexual advances toward plaintiff, that conduct is not sufficient to allow a reasonable jury to find in plaintiff's favor.  Even plaintiff's own mother, who was aware of plaintiff's attachment to Collins, did not have any suspicions about Collins before the abuse occurred.  Under these circumstances, no reasonable jury could find that it should have been obvious to Ptak that Collins would abuse plaintiff.

After Ptak received reports from school staff during plaintiff's seventh grade year and

Ptak spoke to Collins, it is undisputed that no staff members came to Ptak again with concerns about the relationship between plaintiff and Collins.  Ptak herself says that she saw no physical contact between plaintiff and Collins again.  Although some staff members continued seeing Collins and plaintiff hugging, again, there is no authority for the view that a consensual hug is sexual harassment, even if under the circumstances there were good reasons for prohibiting any physical contact between the two.

As evidence of notice, plaintiff relies on an alleged second meeting that Ptak had with Collins in December 2013, during plaintiff's eighth grade year.  Defendant objects to the evidence plaintiff cites as hearsay, but even if I assume that the meeting took place, it does nothing to support plaintiff's claim.  Plaintiff alleges that Ptak told Collins to "be careful," but she does not allege that the meeting was triggered by any new information that Ptak had about plaintiff and Collins.  Without new information, the meeting might be evidence that Ptak had lingering concerns from the previous year, but it is not evidence that she knew about the abuse.

In sum, I conclude that plaintiff has failed to raise a genuine issue of material fact with respect to the question whether Ptak had actual notice of Collins's sexual abuse of plaintiff.  This conclusion is consistent with those in other cases in which courts have granted summary judgment to defendants in Title IX harassment cases.  J.F.K., 678 F.3d at 1261 (defendant did not have actual notice despite knowledge that plaintiff's parents wanted her to stay away from employee, that another student's parent believed employee was "possessive" of plaintiff, that employee was "constantly" sending plaintiff text messages, had

bought gifts for her that were "inappropriately expensive," drove her home from school "against [her] wishes" and shared blanket with plaintiff and touched her legs); Doe v. Flaherty, 623 F.3d 577, 585 (8th Cir. 2010) (defendant did not have actual notice despite knowledge that employee sent sexually suggestive text messages to plaintiff); Henderson v. Walled Lake Consolidated School District, 469 F.3d 479, 484–85 (6th Cir. 2006) (defendant did not have actual notice despite knowledge that employee made phone calls and sent email messages to plaintiff "at odd hours" and that he "engaged . . . in counseling-type discussions" with plaintiff); P.H. v. School District of Kansas City, Missouri, 265 F.3d 653, 662–63 (8th Cir. 2001) (defendant did not have actual notice despite knowledge of other complaints by staff that employee was "spending too much time with" plaintiff during school day, causing plaintiff to miss approximately one quarter of his classes).

In contrast, the case law that plaintiff cites involved much clearer notice than what plaintiff alleges in this case. Green, 298 F. Supp. 2d at 1032–33 (defendant knew that employee told plaintiff that he had had relationship with student who was same age as plaintiff, that employee "had been making sexual innuendos in conversations with" plaintiff and had touched her bare knee and thigh after inviting her into his car); Bostic v. Smyrna School District, No. 01-0261 KAJ, 2003 WL 723262, at *5 (D. Del. Feb. 24, 2003) (defendant knew that employee was socializing with plaintiff alone and off school grounds; that plaintiff had been found sweating in car with "steamed-up windows" while alone with employee; that employee was discussing "marital problems" with plaintiff; and that a witness

22

reported that plaintiff and employee were kissing).  The facts in these case simply are not analogous to this case, so they do not provide support for a ruling in plaintiff's favor.

### B. Negligence

This leaves plaintiff's state law claim for negligence.  Under 28 U.S.C. § 1367(c)(3), the general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial.  Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015).  Plaintiff relies on this general rule when asking the court to decline supplemental jurisdiction over her negligence claim in the event that the court dismisses her claim under Title IX.  However, when the resolution of the state law claims is clear or the state and federal claims raise similar issues, the court may retain jurisdiction.  Cortezano v. Salin Bank & Trust Co., 680 F.3d 936, 941 (7th Cir. 2012); In re Repository Technologies, Inc., 601 F.3d 710, 725 (7th Cir. 2010).  Both of those circumstances apply to this case.

Plaintiff acknowledges that, under Wisconsin law, defendant has immunity from her negligence claim unless she can show that defendant disregarded a "known danger."  Scott v. Savers Property and Casualty Insurance Co., 2003 WI 60, ¶ 16, 262 Wis. 2d 127, 663 N.W.2d 715 (2003).  That is essentially the same standard for proving actual notice under Title IX.  St. Francis School District, 694 F.3d at 873.  Because plaintiff has not shown that defendant had actual notice under Title IX, she cannot show that defendant disregarded a known danger either.  Id.  Accordingly, I am granting summary judgment to defendant on plaintiff's negligence claim as well.

23

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendant Madison Metropolitan School District, dkt. #50, is GRANTED.

2.  Defendant's motion for a protective order, dkt. #50, and plaintiff Jane Doe No. 55's motion for leave to file an additional expert report, dkt. #87, are DENIED as moot.

Entered this 16th day of November, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge