IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANE DOE NO. 55, by and through
JANE DOE'S MOTHER and
JANE DOE'S FATHER,

                                             OPINION and ORDER

                  Plaintiff,

                                             15-cv-570-bbc

    v.

MADISON METROPOLITAN
SCHOOL DISTRICT,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Jane Doe No. 55 sued defendant Madison Metropolitan School District under Title IX of the Education Amendments of 1972 and state law for failing to prevent or stop a district employee from sexually abusing her while she was a student in the district. In an order dated November 16, 2016, dkt. #92, I considered whether plaintiff had adduced sufficient evidence to allow a reasonable jury to find in her favor under Title IX, which required her to show that defendant had "actual notice" that one of its employees, Willie Collins, was sexually abusing or harassing plaintiff at school. I concluded that she had not. It was undisputed that Deborah Ptak (the school principal) and other school staff were unaware of abuse that allegedly occurred during plaintiff's eighth grade year. Further, other interactions between plaintiff and Collins that Ptak observed or otherwise knew about while plaintiff was in seventh grade, such as frequent hugs between the two, did not provide

sufficient notice that harassment was occurring, even if some of the interactions may have suggested that the two had an unhealthy attachment to each other. Because plaintiff's state law claim required a similar showing to that required under Title IX, I granted defendant's motion for summary judgment as to both claims. The clerk of court entered judgment the same day. Dkt. #93.

Now plaintiff has filed a motion for reconsideration under Fed. R. Civ. P. 59 with respect to her Title IX claim, dkt. #96, along with a request for oral argument, dkt. #95. I am denying the request for oral argument because plaintiff does not identify any facts or law she was unable to present to the court in her written submissions. I am denying the motion for reconsideration because I am not persuaded that I erred in granting defendant's motion for summary judgment.

OPINION

Plaintiff's motion for reconsideration is an attempt at a summary judgment "do over." Her 27-page brief (four pages longer than her summary judgment brief) does not focus on particular errors in the summary judgment opinion but rather relitigates nearly every issue related to the general question whether defendant had notice of the abuse. Although plaintiff makes a more forceful argument in her motion for reconsideration than she did in her original brief, she has not shown that she is entitled to a trial on her Title IX claim.

Plaintiff raises many issues in her motion, some of which were not included in her summary judgment brief. I address below those issues that merit additional discussion.

2

A. Standard for Determining Sex Discrimination under Title IX

First, plaintiff challenges the standard I used for determining whether defendant had notice of conduct that qualifies as sex "discrimination" under Title IX, an issue that plaintiff ignored in her summary judgment brief. Even if I assume that plaintiff did not forfeit this issue, she has not identified any reason for changing the standard I applied.

Under Title IX, "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In the summary judgment opinion, I concluded that "[p]rohibited sex discrimination under Title IX includes sexual harassment and sexual abuse, so long as the misconduct was so pervasive or severe that it altered the conditions of plaintiff's education," dkt. #92 at 9, a standard that came from Mary M. v. North Lawrence Comunity School Corp., 131 F.3d 1220, 1228 (7th Cir. 1997). I also cited Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 650 (1999) (conduct is not "discrimination" under Title IX unless it "deprive[s] the victims of access to the educational opportunities or benefits provided by the school"). This standard is consistent with the language of the statute itself, which prohibits sex discrimination in the context of "participation" and "benefits" of an "education program or activity." It is also consistent with Title VII of the Civil Rights Act, which prohibits sexual harassment if it is "so severe or pervasive as to alter the conditions of . . . employment." EEOC v. Management Hospitality of Racine, Inc., 666 F.3d 422, 432 (7th Cir. 2012).

Plaintiff argues that the quoted language in Davis is limited to claims of student-on-student harassment and does not apply to claims of employee-on-student harassment, but this argument has multiple problems. As an initial matter, plaintiff does not identify what she believes the standard *should* be, so even if I agreed with her, I would have nothing to replace the standard I applied.

More important, plaintiff has not pointed to any language in Davis suggesting that I applied the wrong standard. It is true that the facts in Davis involved harassment by another student rather than harassment by an employee and that the holding of the Court was limited to that context. However, the Court derived its standard from the language of Title IX, which does not define discrimination differently depending on the identity of harasser. Plaintiff provides no statutory basis for defining discrimination differently in different contexts. Under Title VII, discrimination in the harassment context is defined the same way regardless whether the plaintiff was harassed by a coworker or supervisor. E.g., Zayas v. Rockford Memorial Hospital, 740 F.3d 1154, 1159 (7th Cir. 2014); Cerros v. Steel Techs., Inc., 288 F.3d 1040, 1045 (7th Cir. 2002); Mason v. South Illinois University at Carbondale, 233 F.3d 1036, 1044–45 (7th Cir. 2000). (The standard for employer liability is different for supervisors and coworkers, Vance v. Ball State University, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013), but that is a separate issue.) Plaintiff identifies no reason why Title IX would be interpreted differently.

Even if I agreed with plaintiff that some other standard should apply, I would be bound by Mary M., 131 F.3d 1220, which involved an employee's abuse of a student.

Although the Court in Davis did not hold that the standard it articulated should apply to harassment by school employees, the Court did not overrule Mary M., either expressly or by implication. Rather, the Court simply did not address the question, so Davis had no effect on Mary M.'s precedential value. Because plaintiff identifies no appellate decision from this circuit overruling Mary M., it is still the law.

In her reply brief, plaintiff suggests that Mary M.'s standard for discrimination is inconsistent with Gebser v. Lago Vista Independent School District, 524 U.S. 274, 277 (1998), but that argument has no merit. In Gebser, the Supreme Court held that a defendant "intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination." Davis, 526 U.S. at 643 (citing Gebser). The Court did not consider what conduct qualifies as discrimination, so Gebser has no bearing on that question.

That being said, I do not mean to suggest that the status of the harasser is irrelevant to the question whether a student was subjected to severe or pervasive conduct that altered the terms of her education. In light of the differences in age and authority, a teacher's or other employee's actions toward a student are more likely to alter that student's educational experience than if the student's peer acted the same way. The Supreme Court recognized that much in Davis, 526 U.S. at 653:

> The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.

This language from Davis is consistent with the view that all students bringing Title IX harassment claims must show that they were denied equal access to educational benefits. However, adverse actions by another student are less likely to meet that standard than actions by a teacher or other adult employee. Because that is the approach I adopted in the summary judgment opinion, I do not need to reconsider the evidence under a different standard.

In the alternative, plaintiff says that, even if she is required to show that she was subjected to severe or pervasive harassment that altered the terms of her education, she does not have to show that defendant had *notice* of conduct that meets that standard. Again, plaintiff does not provide an alternative standard that the court should apply. Regardless, she cites no authority that supports this argument. The passage from Davis, 526 U.S. at 634, that she cites is simply a description of the harassment involved in that case; the Court did not say that a defendant can be held liable if it had notice of conduct that does not qualify as sex discrimination. Rather, the Court stated that a duty to act under Title IX is triggered only by "acts of teacher-student harassment of which [the defendant] had actual knowledge." Id. at 642. See also Gebser, 524 U.S. at 277 ("[A defendant] intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination."); Hansen v. Board of Trustees of Hamilton Southeast School Corp., 551 F.3d 599, 605 (7th Cir. 2008) (only "known acts of discrimination or harassment" trigger a duty to act under Title IX).

I acknowledged in the summary judgment opinion that there is a lack of clarity in

6

circuit case law regarding the meaning of "actual notice" because the Court of Appeals for the Seventh Circuit has described the standard in different ways. Dkt. #92 at 10-13 (discussing Doe v. St. Francis School District, 694 F.3d 869 (7th Cir. 2012), Hansen, 551 F.3d 599, and Delgado v. Stegall, 367 F.3d 668 (7th Cir. 2004). However, I concluded that it was unnecessary to resolve any uncertainty because plaintiff conceded in her summary judgment brief that she had to prove that defendant was aware of conduct that qualified as sexual harassment. Id. at 13-14. In fact, in its opening summary judgment brief, defendant applied the standard that I adopted, dkt. #34 at 3, but plaintiff did not object in her opposition brief. It is too late to do so now. Sigsworth v. City of Aurora, Illinois, 487 F.3d 506, 512 (7th Cir. 2007) ("[A] Rule 59(e) motion is not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment.") (internal quotations omitted).

## B. Publications of the Department of Education

Plaintiff relies on guidelines prepared by the Office of Civil Rights in the Department of Education to support her motion for reconsideration. Dkt. #96, exhibits. She did not cite any of these documents in her summary judgment brief and she does not argue that any of the documents are entitled to deference by this court. However, even if I consider the documents now and assume that they are entitled to deference, they do not suggest a different result.

First, plaintiff cites the following language to support her argument that a reasonable

jury could find that hugs between her and Collins could qualify as sexual harassment under Title IX:

> Title IX's prohibition against sexual harassment generally does not extend to legitimate nonsexual touching or other nonsexual conduct. But in some circumstances, nonsexual conduct may take on sexual connotations and rise to the level of sexual harassment. For example, a teacher repeatedly hugging and putting his or her arms around students under inappropriate circumstances could create a hostile environment. Early signs of inappropriate behavior with a child can be the key to identifying and preventing sexual abuse by school personnel.

Dkt. #96-3 at 3-4.

In the summary judgment opinion, I wrote the following about plaintiff's and Collins's hugs:

> Plaintiff cites no authority for the view that hugging is sexual harassment, particularly under the circumstances of this case in which it is undisputed that it primarily was plaintiff and the other students who initiated hugs with Collins rather than the other way around. Gordon ex rel. Gordon v. Ottumwa Community School District, 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) ("Returning a hug initiated by a student does not suggest that a school employee has a propensity toward sexual abuse."). Plaintiff relies on testimony of the school's safety coordinator for the view that Collins should have limited his physical interactions with students to "side hugs." That may be correct as a matter of good policy, but that does not mean that anything other than a side hug is sexual harassment. Plaintiff does not allege that the hugs she or other students received involved groping or other type of sexual touching.

Dkt. #92 at 15-16.

The discussion in the summary judgment opinion and the department's guidance are not inconsistent. I agree with the broad view taken by the department that there could be some circumstances under which hugs could qualify as sexual harassment in the school setting. However, in this case, the undisputed facts are that plaintiff initiated most of the

hugs that were witnessed by school staff, that all of the hugs were consensual and none of the hugs involved groping or any kind of sexual or inappropriate touching. Nothing in the language cited by plaintiff suggests that hugging under those circumstances rises to the level of sexual harassment under Title IX.

Second, plaintiff cites the following passage in the department's guidelines about "grooming," which is conduct by an adult used to desensitize a child to sexual activity:

> A school should take steps to protect its students from sexual abuse by its employees. It is therefore imperative for a school to develop policies prohibiting inappropriate conduct by school personnel and procedures for identifying and responding to such conduct. For example, this could include implementing codes of conduct, which might address what is commonly known as grooming – a desensitization strategy common in adult educator sexual misconduct. Such policies and procedures can ensure that students, parents, and school personnel have clear guidelines on what are appropriate and inappropriate interactions between adults and students in a school setting or in school-sponsored activities. Additionally, a school should provide training for administrators, teachers, staff, parents, and age-appropriate classroom information for students to ensure that everyone understands what types of conduct are prohibited and knows how to respond when problems arise.

Dkt. #96-3 at 4-5. Along the same lines, plaintiff cites testimony of the principal, Deborah Ptak, in which she acknowledged that "grooming" can occur and that boundaries between students and employees are important, but that grooming of a student is "not something at the forefront of her mind." Dkt #96 at 11. Relying on the department's guidelines and Ptak's testimony, plaintiff says that "[t]here can be no better example of deliberate indifference than when, based on a principal's training, experience, and knowledge, the principal directly observes behavior that the principal knows is dangerous and the principal responds with the matter not being in the forefront of the principal's mind." Id.

This argument has multiple problems. To begin with, Title IX does not prohibit "grooming," it prohibits sexual harassment that is so pervasive or severe that it alters the conditions of a student's education. The department's guidelines are not to the contrary. The statements from the department and Ptak describe *best practices* that a school should adopt to prevent abuse; they do not equate all conduct that falls short of these recommendations with sexual harassment.

Also, plaintiff misrepresents the record when she says that Ptak "directly observe[d] behavior that [she knew] is dangerous." Neither Ptak's testimony nor the department's guidelines support the view that all physical contact between a school employee and a student is "grooming"; rather, both state that boundaries between students and employees are important to prevent the development of an inappropriate relationship.

The testimony and guidelines plaintiff cites might provide support for the view that Ptak was *negligent* in failing to recognize that plaintiff and Collins were developing an inappropriate relationship and that Ptak should have taken more proactive measures to prevent abuse. But negligence is not the standard under Title IX. As I noted in the summary judgment opinion, the key weakness in many of plaintiff's arguments is that she equates "inappropriate conduct" with "sexual harassment" and negligence with "actual notice."

Plaintiff makes a related argument that summary judgment was inappropriate because Ptak and other district employees admitted in their depositions that physical contact such as a hug *can* be grooming. From this, plaintiff argues that Ptak "admitted that there were

two different inferences from the evidence, one in favor of the Plaintiff and one in favor of the Defendant," so a reasonable jury could find in plaintiff's favor. Dkt. #96 at 12.

This argument misrepresents the evidence, the standard for proving a claim under Title IX and the summary judgment standard. Acknowledging that a hug could be grooming behavior is simply recognizing the obvious. *Any* contact between an adult and a child could be grooming behavior, but that does not mean that all contact is sexual harassment under Title IX. Further, the question on summary judgment was not whether a reasonable person could have found in the first instance that Collins's conduct was grooming behavior; that would an impose a standard on defendant even stricter than negligence. Rather, the question was whether plaintiff adduced sufficient evidence to allow a reasonable jury to find that Collins's conduct provided actual notice to defendant that Collins was sexually harassing plaintiff. As discussed in the summary judgment opinion, reasonable people may come to different conclusions regarding what is appropriate and inappropriate conduct. But under Title IX, a defendant cannot be held liable simply because a reasonable person could have construed the available information differently.

## C. Other Arguments

The remainder of plaintiff's motion is devoted to a hodgepodge of different arguments regarding her view of the evidence supporting her claim. Many of these arguments rely on allegations that plaintiff does not support with citations to her proposed findings of fact or even to the record generally. Those arguments are forfeited.

In any event, I see little in plaintiff's other arguments that merits additional discussion. I will respond briefly to the arguments that do.

First, plaintiff says repeatedly that, in determining whether the hugs and other physical contact between plaintiff and Collins provided actual notice of sexual harassment under Title IX, the court should consider the "non-physical grooming" that occurred. E.g., Dkt. #96, at 9. Without any citation to the record, plaintiff lists the following conduct:

> the private conversations between Collins and Jane Doe, the Plaintiff's crush/infatuation with Collins, her use of his name as her iPod password, her untruthful statements to her teacher about Collins being a family friend and a family member dying or being sick, Collins' appearing at Jane Doe's sporting events, and in Jane Doe's 8th grade year, her coming to class very upset and crying because Collins was upset about something, and her repeatedly coming late to class escorted by Collins, and being pulled out of class by Collins.

Id.

Setting aside plaintiff's failure to cite the record, none of the alleged conduct would allow a reasonable jury to find that defendant had actual notice of sexual harassment. As a general matter, I agree with plaintiff that an alleged harasser's behavior should be viewed in context, including behavior that does not involve physical contact. Even if that behavior in itself does not qualify as sexual harassment, it can show a defendant how ambiguous conduct should be interpreted.

This does not get plaintiff very far, however. It is undisputed that defendant was unaware of some of the conduct in that list, including all the conduct that occurred when plaintiff was in eighth grade. Some of the conduct is *plaintiff's* conduct, not Collins's, making it more difficult to argue that it is evidence of sexual harassment or even grooming. For

example, plaintiff does not allege that Collins was even *aware* that she had used his name as a password. With respect to the remaining conduct, such as the private conversations, plaintiff does not cite any evidence that Ptak was aware of any suspicious interactions that occurred between plaintiff and Collins after Ptak learned of that conduct. In fact, it is undisputed that Ptak told Collins directly not to speak to plaintiff in private after she learned about those conversations.

Second, plaintiff says that the court should not have considered as relevant whether plaintiff initiated hugs or other physical contact with Collins, consented to that contact or felt uncomfortable because of it. Plaintiff relies on Mary M., 131 F.3d at 1226–27, in which the court declined to incorporate into Title IX the element in Title VII that harassment must be "unwelcome" because "children may not even understand that they are being harassed."

I cited this holding of Mary M. in the summary judgment opinion, noting that, "when the student is a minor, she cannot 'consent' to harassment." Dkt. #92 at 17. However, in Mary M., the question was not whether hugs met the standard for sexual harassment. Rather, the student and school employee in Mary M. had been involved in a sexual relationship and the question before the court was whether the district court should have required the student to prove at trial that the relationship was "unwelcome." A sexual relationship between an adult and a minor is always nonconsensual under the law, but obviously the same cannot be said of conduct such as a hug because a hug is not inherently sexual or even inappropriate. *Some* hugs between an adult and a minor could qualify as sexual harassment, but that determination requires a consideration of the context of the hug,

13

including the student's reaction to it. As I noted in the summary judgment opinion, although Mary M. declined to include an element of "unwelcomeness" in a Title IX harassment claim, a student does have to show that the "the harassment was so pervasive or severe that it altered the conditions of plaintiff's education." Mary M., 131 F.3d at 1228. Plaintiff does not explain how a hug could provide notice to a school administrator under that standard if a student shows no reluctance to the hug and the hug does not include sexual or otherwise inappropriate touching.

Third, plaintiff says that the court erred by considering pieces of evidence individually, instead of looking at "facts in their totality." Dkt. #96 at 23. However, plaintiff does not explain specifically how the court's analysis should have been different. As plaintiff acknowledges, I wrote in the summary judgment opinion that "the concerns communicated by school staff [regarding nonphysical interactions between plaintiff and Collins] are not sufficient to provide actual notice, even when considered with the physical interactions that plaintiff and Collins had during her seventh grade year." Dkt. #92 at 20.

If the question presented in this case were whether defendant did all it could have or all it should have to protect plaintiff from harassment and abuse, plaintiff would have a strong argument that a reasonable jury could rule in her favor. I expressed a similar view throughout the summary judgment opinion. Dkt. #92 at 1-2 ("[Plaintiff's evidence] might allow a reasonable jury to find that defendant was aware of inappropriate conduct and acted unwisely by failing to take more aggressive steps to stop it."); id. at 15 ("[I]f the question were whether Ptak was aware of inappropriate conduct, . . . differences in opinion [among

14

school staff regarding physical contact between staff and students] would lend support to the view that there is a genuine issue of material fact precluding summary judgment."); id. at 19 ("I agree with plaintiff that a reasonable jury could find that the relationship between her and Collins was disconcerting. However, the Court of Appeals for the Seventh Circuit has held that concerns about an inappropriate relationship are not sufficient to give actual notice of sexual harassment under Title IX.") (internal quotations and citations omitted); id. at 20 ("Plaintiff's conduct may have suggested that plaintiff and Collins should not have any contact with each other because plaintiff had an unhealthy attachment to him, but the question presented by a claim under Title IX is not whether the defendant made a wise decision.").

I granted defendant's motion for summary judgment, not because I concluded that defendant's conduct was exemplary or even reasonable. Rather, I granted the motion because I concluded that plaintiff had failed to show that a reasonable jury could find that defendant had actual notice of sexual harassment. There may be ample room for criticism of defendant's failure to investigate plaintiff's and Collins's relationship more thoroughly, but that failure cannot be equated with actual notice. I am denying plaintiff's motion for reconsideration because I adhere to my view from the summary judgment opinion that the evidence plaintiff adduced would not permit a reasonable jury to find that defendant violated Title IX.

15

ORDER

IT IS ORDERED that the plaintiff Jane Doe No. 55's motion for oral argument, dkt. #95, and motion for reconsideration, dkt. #96, are DENIED.

Entered this 9th day of February, 2017.

                                                                         BY THE COURT:
                                                                         /s/
                                                                         BARBARA B. CRABB
                                                                         District Judge